

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS

### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Charles T. Banister
Criminal District Attorney
Corsicana, Texas

Dear Sir:

Opinion No. O-3016
Re: Would it be a violation of
the nepotism statute for
the commissioners' court
to appoint Lawrence D.
Ransom to fill the two
year term beginning Jan-
uary 1, 1941, of the of-
fice of county clerk under
the facts set forth?

Your recent request for an opinion of this depart-
ment upon the questions as are herein stated has been re-
ceived.

We quote from your letter as follows:

"This office has been requested by the
County Judge elect of Navarro County to secure
an opinion on the following questions:

"(1) Would it be a violation of the
nepotism statute for the commissioners' court
to appoint Lawrence D. Ransom to fill the two
year term beginning January 1, 1941, of the
office of County Clerk, who is related to the
County Judge elect who will be presiding over
the commissioners' court on and after January
1, 1941, in the following way: The County
Judge elect and the wife of Ransom had the
same grandmother but different grandfathers.
As a result, the mother of the County Judge
elect and the father of Ransom's wife were
half brother and sister. Ransom's wife and
the County Judge elect are thus half first
cousins.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"(2) If the relationship by affinity between Ransom and the County Judge elect comes within the second degree classification, would it be legal for the incoming commissioners' court acting in the absence of the incoming county judge, after January 1, 1941, to appoint Ransom county clerk, and could he legally serve by such appointment?

"In explaining the facts incident to the above situation, the County Clerk of Navarro County was re-elected in the November election for a two year term beginning January 1, 1941. A few days after the November election the County Clerk died. The present commissioners' court then met and made a temporary appointment of the brother of the deceased county clerk, effective until January 1, 1941. On January 1, 1941, when the new commissioners' court of Navarro County is formed, said court will then appoint someone county clerk for the two year term beginning on that date.

"The law in regard to this matter is, of course, based on Article 432 of the Texas Penal Code, which forbids certain officials from appointing, voting for or confirming the appointment of any person related within the second degree by affinity or within the third degree by consanguinity. In your Opinion No. O-2225 you held that it would be a violation of Article 432 for a city council to appoint a city attorney whose wife was the first cousin by consanguinity to the wife of the mayor.

"In connection with the second question, Article 435 Texas Penal Code forbids the officials included within Article 432 Texas Penal Code from approving any account or drawing or authorizing the drawing of any warrant or order to pay any salary, fee or compensation to an ineligible officer or person. It is of course necessary for the commissioners court to approve the payment of salaries to officials, including the County Clerk, and it is the practice in this county for the County Judge to sign all salary checks."

Articles 432 and 433, Vernon's Annotated Penal Code, read as follows:

"Art. 432. No officer of this State or any officer of any district, county, city precinct, school district, or other municipal subdivision of this State, or any officer or member of any State, district, county, city, school district, or other municipal board, or judge of any court, created by or under authority of any general or special law of this State, or any member of the Legislature, shall appoint, or vote for, or confirm the appointment to any office, position, clerkship, employment or duty, of any person related within the second degree of affinity or within the third degree by consanguinity to the person so appointing or so voting, or to any other member of any such board, the Legislature, or court of which such person so appointing or voting may be a member, when the salary, fees, or compensation of such appointee is to be paid for, directly or indirectly, out of or from public funds or fees of office of any kind or character whatsoever.".

"Art. 433. The inhibitions set forth in this law shall apply to and include the Governor, Lieutenant Governor, Speaker of the House of Representatives, Railroad Commissioners, head of the departments of the State government, judges and members of any and all Boards and courts establishing by or under the authority of any general or special law of this State, members of the Legislature, mayors, commissioners, recorders, aldermen and members of school boards of incorporated cities and towns, public school trustees, officers and members of boards of managers of the State University and of its several branches, and of the various State educational institutions, and of the various State eleemosynary institutions, and of the penitentiaries. This enumeration shall not be held to exclude from the operation and effect of this law any person included within its general provisions.'

In Tyler Tap Railroad Co. & Douglass vs. Overton, 1 App. Ct. of Appeals, sec. 533, 534, 536, the methods of computing the degrees of consanguinity were stated by the court as follows:

"In computing the degree of lineal consanguinity existing between two persons, every generation in the direct course of relationship between the two parties makes a degree, and the rule is the same by the civil and common law. The mode of computing degrees of collateral consanguinity at the common and by the canon law is to discover the common ancestor, to begin with him to reckon downwards, and the degree the two persons, or the more remote of them, is distant from the ancestor, is the degree of kindred subsisting between them. For instance, two brothers are related to each other in the first degree because from the father each one of them is one degree. An uncle and nephew are related to each other in the second degree, because the nephew is two degrees distant from the common ancestor, and the uncle is extended to the remotest degree of collateral relationship."

This department has continuously held that first cousins are related by consanguinity in the second degree; the department has further held that degrees of affinity are computed in the same way as those of consanguinity. That is to say, that relations of the wife stand in the same degree of affinity to the husband as they are related to the wife by consanguinity.

Under the nepotism statute of this State no officer of the State or any municipal subdivision thereof, nor any officer or member of any State or municipal board, shall appoint, or vote for, or confirm the appointment of any office of emolument, of any person related within certain specified degrees to him or to any other member of such Board, when the compensation of such person is to be paid out of public funds or fees of office of anykind whatsoever. Evasion of nepotism by trading, and approval of the accounts or the drawing of warrants to pay the compensation of any ineligible officer or person, are also dealt with. The statute provides also for the punishment of any person who violates any of its provisions.

This department held on September 13, 1932 in an opinion written by Honorable Scott Gaines, addressed to Honorable L. L. Roberts, County Auditor, Hutchinson County, Texas, that "there is no distinction to be drawn between the half-blood kin and the full-blood kin under the anti-nepotism law, and the half-blood relationship would be within the same degree as that of the full-blood."

"When the relationship by consanguinity (blood) is determined, there is no difficulty in arriving at the relationship by affinity (marriage), because a woman's husband would be related within the same degree by affinity that the woman is herself related by consanguinity, and vice versa."

Under the above stated facts the County Judge elect and Mr. Ransom are related by affinity in the second degree, a degree coming within the above mentioned statutes prohibiting the appointment, etc.

Therefore, you are respectfully advised that it is the opinion of this department that it would be a violation of the nepotism statutes for the commissioners' court to appoint Mr. Ransom to fill the office of county clerk.

With reference to your second question it would be immaterial whether or not the incoming County Judge was absent or refused to act in the appointment of Mr. Ransom by the commissioners' court. Therefore, your second question is respectfully answered in the negative.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Ardell Williams
Assistant

AW:RS

APPROVED JAN 10, 1941

ATTORNEY GENERAL OF TEXAS